ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2005 OCT 26  AM 11: 20

CLERK
SO. DIST. OF GA.

TRACY ANTHONY MILLER,   )
                        )
    Plaintiff,           )
                        )
v.                       )   CV 105-153
                        )
JAMES DONALD, Commissioner; THE GEORGIA DEP'T OF  )
CORRECTIONS; THE GEORGIA BOARD OF PARDONS AND     )
PAROLES; ALEXIS CHASE, Warden; HUGH SMITH, Warden; )
TONY HOWERTON, Warden; FNU BANKS; FNU MORGAN;     )
CYNTHIA MILLS; FRED BROWN; JOHN THOMAS; FNU       )
LEACH; FNU JONES; FNU BURNSIDE; FNU BLUNT; TROY   )
WILLIAMS, Captain; FNU FORRESTER; and FNU GABRIEL; )
                        )
    Defendants.          )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff Tracy Anthony Miller ("Miller"), an inmate incarcerated at Augusta State Medical Prison, in Grovetown, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983, and he seeks leave to proceed *in forma pauperis* ("IFP"). For the reasons explained herein, the Court **REPORTS** and **RECOMMENDS** that Miller be accorded "28 U.S.C. § 1915(g)-*plus*" status, that his motion to proceed IFP be **DENIED**, and that the instant action be **DISMISSED**.

### I. BACKGROUND

As will be discussed at length herein, Miller is a well-known frequent filer of civil rights and habeas corpus actions in the federal courts of the State of Georgia. In the past year alone, Miller has had two habeas petitions brought pursuant to 28 U.S.C. § 2254 dismissed as impermissibly second or successive, see Miller v. Chase, CV 105-093 (S.D. Ga. Aug. 8, 2005); Miller v. All Georgia Judges, CV 104-082 (S.D. Ga. July 21, 2004), *aff'd by* Miller v.

All Georgia Judges, No. 04-13890-C (11th Cir. Dec. 20, 2004), and two IFP civil rights complaints brought pursuant to 42 U.S.C. § 1983 dismissed as barred by 28 U.S.C. § 1915(g),[1] see Miller v. All Georgia Judges, CV 105-428 (N.D. Ga. March 28, 2005); Miller v. Brown, CV 604-100 (S.D. Ga. Oct. 7, 2004). Nevertheless, although the vast majority of Miller's cases have been summarily dismissed, either pursuant to the screening provisions of the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915, or Rule 4 of the Rules Governing § 2254 Cases,[2] he has recently brought two civil rights suits in the federal courts of Georgia which survived screening under § 1915 and are presently pending. See Miller v. Pryor, CV 505-029 (M.D. Ga. Aug. 11, 2005) and Miller v. King, CV 698-109 (S.D. Ga. Feb. 20, 2002), *aff'd in part, rev'd in part, and remanded by* Miller v. King, 384 F.3d 1248 (11th Cir. 2004), *petition for reh'g en banc filed*, (11th Cir. Oct. 27, 2004)(No. 02-13348).

Miller's claims in King and Pryor are strikingly similar to each other, as well to Miller's instant complaint. Miller, a paraplegic, wheelchair-bound inmate with a long history of disciplinary problems, brought King in this District in 1998, while incarcerated at Georgia State Prison ("GSP"), in Reidsville, Georgia. King, 384 F.3d at 1254. The Eleventh Circuit

---

[1]Section 1915(g), "commonly known as the three strikes provision, requires frequent filer prisoners to prepay the entire filing fee before federal courts may consider their lawsuits and appeals." Rivera v. Allin, 144 F.3d 719, 723 (11th Cir. 1998)(internal citations omitted). Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

[2]Rule 4 of the Rules Governing Section 2254 Cases states in pertinent part:

> The petition shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified.

summarized Miller's claims in King as follows:

> Miller originally filed this action under 42 U.S.C. § 1983 against Ronald King, the Hearing Officer for the Office of Inmate Discipline at GSP, and Wayne Garner, Commissioner of the Georgia Department of Corrections ("GDOC"), in their official and individual capacities. The original complaint alleged that the defendants had deprived Miller of various due-process rights under the Fourteenth Amendment, including the right to present witnesses in his disciplinary hearings. Miller also alleged that the defendants had placed him in isolation because he is disabled and in retaliation for his filing suits.
>
> Miller subsequently amended his complaint to add as defendants the State of Georgia, the GDOC, and GSP Warden Johnny Sikes, in his official and individual capacities. Miller also added disability-discrimination claims under Title II of the ADA, retaliation claims under the First Amendment, and cruel-and-unusual-punishment claims under the Eighth Amendment. Miller's complaint (as amended, the "Complaint") sought monetary and injunctive relief.
>
> Regarding his Eighth-Amendment and ADA claims, Miller's Complaint essentially makes the following claims against the defendants: (1) that there is no room in his small cell for him to maneuver his wheelchair, making him immobile and restrained for extended periods of time and that this problem is exacerbated by GSP staff's failure to remove his bed from his cell daily, as prison policy requires for wheelchair-bound inmates; (2) that the showers and toilets in the K-Building are not wheelchair-accessible, that he has been denied the opportunity to bathe regularly and to obtain basic hygiene, and that GSP staff have not provided him necessary urine catheters or assistance in using portable toilets, resulting in Miller's urination and defecation on himself; and (3) that GSP officials and staff have ignored his medical complaints, failed to provide him with rudimentary medical devices required for his paraplegic condition, including leg braces, orthopedic shoes, a wheelchair-accessible van, and wheelchair repairs, and failed to provide him with required medical care, including physical therapy, occupational therapy, and medical evaluation for his spinal condition, resulting in bed sores, serious atrophy, and deterioration of his spinal condition. As additional ADA claims, Miller asserts that he has been denied basic privileges provided to able-bodied inmates in isolation, including removal from isolation for one day after each thirty-day isolation period, and participation in "yard call" and "gym call" during each such removal day.
>
> Miller alleges that GSP officials and staff, including Warden Sikes personally, were aware of his paraplegic condition, the inhumane conditions of his confinement and his serious medical needs, and were deliberately indifferent to those conditions and needs. On these bases, Miller seeks monetary damages and injunctive relief under § 1983 and Title II of the ADA.

Id. at 1254-55 (footnote omitted). This Court entered summary judgment against Miller as to the vast majority of Miller's claims; the remainder were resolved against Miller during a jury

trial. Id. at 1257-58. The Eleventh Circuit reversed only as to the grant of summary judgment on Miller's Eighth Amendment and ADA claims against Sikes. Id. at 1278. However, no mandate from the Court of Appeals has been entered because Miller has filed a petition for rehearing *en banc* that is still pending.

Meanwhile, after a transfer to Men's State Prison ("MSP"), in Hardwick, Georgia, Miller brought Pryor in the Middle District of Georgia earlier this year. The presiding judge, the Honorable C. Ashley Royal, United States District Judge for the Middle District of Georgia, summarized Plaintiff's claims in Pryor as follows:

> In his original Complaint, Plaintiff, a wheelchair-bound inmate with complete paralysis in his right leg and partial paralysis in his left leg, lists numerous complaints. Plaintiff chiefly contends that he is currently being denied medical care as well as accommodation for his disability. He alleges that he is being denied physical therapy and necessary medical devices, such as leg braces and orthopedic shoes. Plaintiff claims that the lack of treatment for his medical condition has led to bed sores and "serious atrophy and deterioration of his spinal condition," and accordingly suffers "vomiting, coughing, bleeding, [and] high blood pressure." In his Complaint, Plaintiff additionally pled that, in his present circumstances, he is defenseless against attacks from other inmates and that he is being subjected to secondhand smoke against his will.
> Plaintiff further claimed that he is being exposed to asbestos found in the prison. Plaintiff also pled that he has been placed in a cell too small for his wheelchair and has inadequate access to toilet and shower facilities, and as a result of these conditions, he has been denied the ability to bathe and has been forced to urinate and defecate on himself.
> Other claims include conspiracy of prison officials and court officials to deny Plaintiff access to courts; punishment and retaliation by prison officials in the form of placing Plaintiff in isolation, taking away Plaintiff's wheelchair, labeling him as a sex offender and troublemaker, cursing at him, failing to provide Plaintiff with grievance forms in a timely manner, and fabricating disciplinary reports; lack of adequate security officers in the dorm; administering the antibiotic "Ciprofloxacin" without follow-up treatment; denying Plaintiff access to telephones; and, finally, prison overcrowding.

Pryor, CV 505-029, doc. no. 33, p. 3 (M.D. Ga. Aug. 11, 2005). Noting that Miller was barred from proceeding IFP by § 1915(g) absent a well-pled allegation of "imminent danger of serious

4

physical injury," Judge Royal determined that Miller had met that requirement as to his "allegations involving a denial of physical therapy and necessary medical devices and/or treatments." Id. at 11. All of the other claims were dismissed.[3] Id.

Miller has since been transferred to the Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, and has now filed the instant complaint. Miller's nearly incomprehensible, stream-of-consciousness complaint brings a panoply of claims, most of which utterly fail to make any showing of "imminent danger." However, he also brings other claims which are strikingly familiar: (1) his cell is too small for his wheelchair; (2) he has been denied access to showers and toilets and must urinate and defecate on himself; (3) he has been denied orthopedic shoes; (4) he has been denied physical therapy; and (5) he has been denied medication. (Doc. no. 1, pp. 5-10). Of course, these are the very alleged conditions about which Miller complained in Pryor and King while incarcerated at MSP and GSP. One might suppose that Miller is now alleging that he has been subjected to similar conditions at ASMP, but such an assumption is undercut by Miller's candid admission that he has previously filed federal lawsuits "dealing with the same facts involved in this action." (Id. at 1). Miller names

---

[3]The procedural history of Pryor is actually quite unusual. Initially, the case was referred to the Honorable Claude W. Hicks, Jr., United States Magistrate Judge. After noting Miller's history as a vexatious litigant and his claims of imminent danger, Judge Hicks ordered Mr. Tydus Meadows, the Warden of MSP, to respond to Plaintiff's allegations *before* the court issued a ruling on Miller's request to proceed IFP. CV 505-029, doc. no. 7. Mr. Meadows responded by moving to dismiss the case and providing affidavits from MSP officials and medical personnel specifically contradicting Miller's allegations. CV 504-029, doc. no. 10. Satisfied that Miller's claims had been shown to be nothing more than a bare attempt to circumvent § 1915(g), Judge Hicks recommended that Miller be denied leave to proceed IFP and that the case be dismissed. CV 505-029, doc. no. 14.

Initially, Judge Royal adopted Judge Hicks's recommendation, but upon reconsideration vacated the judgment and referred the case again to Judge Hicks with instructions to accept Miller's allegations as true for the purposes of screening under § 1915. CV 505-029, doc. no. 19. After allowing both Miller and the defendants to further address Miller's claims of imminent danger, Judge Hicks again recommended dismissal of the action as lacking any realistic chance of success. CV 505-029, doc. no. 30. Judge Royal declined to adopt that recommendation, instead allowing the case to go forward--Judge Hicks then recused himself from the case. CV 505-029, doc. nos. 33, 35. The Defendants have sought and were granted leave to appeal, and the case is now stayed pending the Eleventh Circuit's resolution of the issue. CV 505-029, doc. no. 46.

multiple corrections officials, including supervisory officials at the Georgia Department of Corrections and prison officials from GSP, MSP, and ASMP.[4] (Id.).

Thus, it seems this case is largely a regurgitation of claims Miller has already brought in King and Pryor--along with a cornucopia of more dubious claims against officials at all three prisons at which Miller has been incarcerated. At issue is whether Miller's bare allegations--which are buried amidst a plethora of claims against myriad defendants--should allow Miller to circumvent the § 1915(g) bar. The Court will also assess whether Miller's litigation conduct merits sanction. Fed. R. Civ. P. 11(c).

## II. DISCUSSION

Miller's instant complaint exemplifies a strategy frequently used by vexatious prisoner litigants. Aware that he cannot proceed IFP absent a showing of "imminent danger," Miller has reproduced allegations regarding his medical care which, taken as true, survived § 1915 screening in King and Pryor. Even assuming that Miller alleges that he is being denied medical care at ASMP, at issue is whether the Court must take Miller at his word and ignore his previous filing history, as well as the fact that he is attempting to use claims of "imminent danger" as a means to force a shotgun blast of other frivolous and duplicative claims into court. The Court is persuaded that such a policy would render the § 1915(g) bar meaningless and subject the Court to unabated abusive litigation.

The Honorable B. Avant Edenfield, United States District Judge for the Southern District of Georgia, has addressed the issue of abusive, serial filers who continue to file IFP suits in this District irrespective of the § 1915(g) bar. See Milanovich v. Smith, CV 601-085,

---

[4] Of course, it should be noted that Miller's transfer to ASMP renders any claim of "imminent danger" against GSP or MSP officials moot.

doc. no. 13 (S.D. Ga. Sept. 12, 2001). In Milanovich, Judge Edenfield instituted a "§ 1915(g)-*plus*" procedure, whereby a vexatious prisoner litigant may be barred from proceeding in this District until he has paid all accrued § 1915 fee debt to the Court, unless his filing fits into one of three tightly circumscribed categories: (1) filings in any criminal proceeding brought against him; (2) a timely filed reconsideration motion showing why the "§ 1915(g)-*plus*" sanction should not be applied to him; and (3) any filing that argues that the vexatious litigant has been denied access to the state courts. Such filings are referred to Judge Edenfield for exclusive treatment; all other papers from the prisoner are returned unfiled by the Clerk of Court. Id. at 5-6. Thus, once a prisoner has attained the dubious achievement of "§ 1915(g)-*plus*" status, even a facially valid claim of "imminent danger" will not allow him to proceed IFP in this District.[5]

Typically, once a prisoner has established himself as a frequent filer, Judge Edenfield will instruct a United States Magistrate Judge such as the undersigned to review the prisoner's filing history to determine whether the prisoner is such an egregious abuser of the judicial process that "§ 1915(g)-*plus*" sanctions should be imposed. In fact, Judge Edenfield referred Miller to the Honorable James E. Graham, United States Magistrate Judge, for a "§ 1915(g)-*plus*" recommendation following the dismissal of a case in 2001. See Miller v. Bell, CV 601-087, doc. no. 19 (S.D. Ga. Oct. 11, 2001). At that time, Judge Graham determined that Miller had not yet exhibited such a history of abusive litigation that it would be appropriate to impose "§ 1915(g)-*plus*" sanctions. Id. However, Judge Graham also warned:

---

[5] See id. at 4 ("While this "§ 1915(g)-*plus*" bar may seem like it neutralizes the "imminent harm" exception to § 1915(g)--"*plus*" prisoners, by their own repetitive filing misconduct, have made it clear that they will simply cry wolf on that score--["*plus*" prisoners'] court-access rights will not be unconstitutionally abridged because [they] will still have access to the courts -- the *Georgia* courts. [Georgia state courts] are, after all, obligated to (and do) reach all constitutional claims . See, e.g., Howard v. City of Columbus, 239 Ga. App. 399 (1999).").

7

> Plaintiff should not interpret this recommendation as permission to file further frivolous, malicious, or baseless claims. Should Plaintiff attempt to abuse the federal judicial system further, the Court will take such actions as are necessary "'to take the rattle from the baby.'"

Id. (quoting Milanovich v. Smith, CV 601-085, doc. no. 13 (S.D. Ga. Sept. 12, 2001) (quoting Washington v. Alaimo, 934 F. Supp. 1395, 1400-02 (S.D. Ga. 1996)).

Now, four years later, it is appropriate to revisit the issue and determine whether Miller's conduct in the interim justifies affording him "§ 1915(g)-*plus*" status at this time. Upon the careful review of Miller's filing history that follows, the Court **REPORTS** and **RECOMMENDS** that Miller be accorded "28 U.S.C. § 1915(g)-*plus*" status, that his motion to proceed IFP be **DENIED**, and that the instant action be **DISMISSED**.

A. **Miller's Filing History**

1. **Pre-Bell**

As noted, in Bell Judge Graham surveyed Miller's filing history. Judge Graham determined that Miller had filed at least twenty-three (23) suits in the federal courts of Georgia between 1992 and 2001 and that he owed at least $1,350.00 in filing fees to this Court alone.[6] Bell, CV 601-087, doc. no. 19, pp. 2-3. Judge Graham also noted that Miller had been subject to the § 1915(g) bar since October 1999, and that Miller had no less that five (5) cases dismissed pursuant to § 1915(g) between 1999 and 2001. Id. at 3. Nevertheless, Judge Graham determined that Miller had not yet exhibited "the level of systematic abuse"

---

[6] It is perhaps noteworthy that Judge Graham did not consider Miller's appellate filing history. By the time of Judge Graham's recommendation, Miller had filed numerous appeals with the Eleventh Circuit, at least six (6) of which were dismissed for frivolity or lack of jurisdiction: (1) Miller v. Waters, No. 01-12841-B (11th Cir. July 24, 2001)(appeal dismissed for lack of jurisdiction); (2) Miller v. Diaz, No. 01-11065-E (11th Cir. June 1, 2001)(same); (3) Miller v. Waters, No. 00-11854-F (11th Cir. Aug. 28, 2000)(same); (4) Miller v. Wetherington, No. 99-12215-B (11th Cir. Feb. 3, 2000)(appeal dismissed as frivolous); (5) Miller v. King, No. 99-10648-F (11th Cir. Jan. 10, 2000)(same); (6) Miller v. Sikes, No. 98-8324-E (11th Cir. Sept. 9, 1998)(appeal dismissed for lack of jurisdiction).

8

contemplated by Milanovich. Id. at 4. By comparison, at the time Judge Edenfield imposed "28 U.S.C. § 1915(g)-*plus*" status in Milanovich, Milanovich had filed 54 unsuccessful federal cases, and exhibited extreme litigation conduct by writing complaints on tissue paper and deliberately disobeying court orders. Id. Accordingly, as discussed *supra*, Judge Graham declined to recommend "28 U.S.C. § 1915(g)-*plus*" sanctions, but issued Miller a stern warning that continued frivolous litigation would merit serious consequences.

### 2. Post-Bell Filing Activity/Summary

Unfortunately, Miller has not heeded Judge Graham's warning. Since Judge Graham's warning in October 2001, Miller has pursued at least eight (8) civil rights cases, habeas petitions, and appeals which have been dismissed for frivolity, absence of legal merit, or want of jurisdiction.[7] As noted *supra*, in the past year alone, Miller has had two habeas petitions dismissed as impermissibly second or successive, and two civil rights cases dismissed as frivolous. Moreover, although the Court will not recount each case or appeal herein, the undersigned's review of Miller's entire filing history reveals that Miler has now filed a total of more than thirty (30) appeals[8] with the Eleventh Circuit (dating back to 1997) and more than

---

[7](1) Miller v. Chase, CV 105-093 (S.D. Ga. Aug. 11, 2005)(dismissing habeas petition brought pursuant to 28 U.S.C. § 2241 as improper attempt to circumvent restrictions on filing second or successive 28 U.S.C. § 2254 petition); (2) Miller v. All Georgia Judges, CV 105-428 (N.D. Ga. March 23, 2005)(dismissing § 1983 complaint as frivolous); (3) Miller v. Dep't of Corrections, No. 04-15025-I (11th Cir. March 1, 2005)(denying leave to proceed IFP on appeal under § 1915(g)); (4) Miller v. Brown, CV 604-100 (S.D. Ga. Oct. 7, 2004)(dismissing § 1983 complaint as barred by § 1915(g) and as sanction for dishonesty in complaint regarding filing history); (5) Miller v. All Georgia Judges, CV 104-082 (S.D. Ga. July 21, 2004)(dismissing § 2241 petition as equivalent of impermissible second or successive § 2254 petition), *motion for cert. of appealability denied by* Miller v. All Georgia Judges, No. 04-13890-C (11th Cir. Dec. 20, 2004); (6) Miller v. Wetherington, No. 02-11107-C (11th Cir. May 3, 2002)(appeal dismissed for lack of jurisdiction); (7) Miller v. King, 01-14028-I (11th Cir. Jan. 9, 2002)(appeal dismissed as frivolous); (8) Miller v. Hall, CV 101-119 (S.D. Ga. Oct. 2, 2001)(denying § 2254 petition as second or successive), *motion for cert. of appealability denied by* Miller v. Hall, No. 01-15737 (11th Cir. Feb. 8, 2002).

[8]The Court has not included Miller's applications to the Eleventh Circuit for leave to file a second or successive § 2254 habeas petition in its recitation of Miller's filing history. Nevertheless, it is noteworthy that the Eleventh Circuit has denied Miller permission to file a successive petition on no less than twelve (12) occasions: (1) In re Miller, No. 05-10199-I (11th Cir. Jan. 28, 2005); (2) In re Miller, No. 04-14133 (11th Cir.

thirty (30) cases in the federal district courts of Georgia (dating back to 1992), over twenty (20) of which were filed in this District. Among his district court cases, Miller has been denied leave to proceed IFP ten (10) times, and another six (6) cases have been dismissed *sua sponte*. Of the remaining cases, six were resolved against Miller either on defendants' motions to dismiss or for summary judgment, six were resolved when juries entered verdicts for defendants, and two are still pending. To the Court's knowledge, Miller has never obtained a final judgment in his favor, although he has occasionally succeeded in securing reversal and remand from the Eleventh Circuit.

Considering Miller's continued filing activity since Judge Graham's October 2001 recommendation, one would expect Miller's fee debt to have increased. Remarkably, Miller's debt has actually decreased slightly. As of the date of this Report and Recommendation, Miller owes the Court $1,329.00.[9] Given the sum of Miller's filing history, Miller's debt levels in 2001 ($1,350.00) and at present ($1,329.00), although significant, seem surprisingly low. The explanation for this is simple.

First, many of Miller's cases were filed before the enactment of the PLRA, and thus no filing fee was assessed in those cases. In addition, because the judges of this District have been quick to prevent Miller from proceeding without payment of the entire $150.00 (now

---

Sept. 1, 2004); (3) In re Miller, No. 03-15753 (11th Cir. Nov. 26, 2003); (4) In re Miller, No. 03-13898-C (11th Cir. Aug. 4, 2003); (5) In re Miller, No. 03-12867 (11th Cir. June 23, 2003); (6) In re Miller, No. 02-12526-F (11th Cir. May 29, 2002);(7) In re Miller, No. 01-15790-H (11th Cir. Nov. 7, 2001); (8) In re Miller, No. 01-13632-I (11th Cir. July 24, 2001); (9) In re Miller, No. 00-15794-E (11th Cir. Dec. 4, 2004); (10) In re Miller, No. 00-14705-J (11th Cir. Oct. 2, 2000); (11) In re Miller, No. 00-14312-A (11th Cir. Sept. 12, 2000); (12) In re Miller, No. 00-13444-D (11th Cir. July 24, 2000).
   Although not included in this Court's analysis, it should be pointed out that Miller's relentless applications to the Eleventh Circuit are illustrative of Miller's repetitive, meritless, and continual court-filing activity. Also, because no fee is required to file such an application with the Eleventh Circuit, these cases demonstrate Miller's potential for unchecked paper-lobbing in the absence of a meaningful deterrent.

[9]Attached to this Report and Recommendation as Exhibit "A" is a computer printout of the fees currently owed by Plaintiff in this District, as recorded in the Court's computer system.

$250.00) filing fee in the absence of a meritorious allegation of imminent danger as provided in 28 U.S.C. § 1915(g), Miller has not been allowed to rack up court charges he might otherwise have accrued. Also of import, much of Miller's abusive litigation has taken the form of repetitive habeas corpus actions. The PLRA's filing fee provisions and "three strikes" rules do not apply to habeas cases. Anderson v. Singletary, 111 F.3d 801, 806 (11th Cir. 1997). In addition, habeas cases, unlike PLRA cases, are subject to a filing fee of only $5.00. See 28 U.S.C. § 1914(a).

It should also be recognized that Miller has been savvy enough to realize that he can lob paper at the Court without subjecting himself to additional filing fees by continuing to bring motions in cases that have already been opened. The result is that Miller's cases tend to drag on for years, and filing activity may not cease even after the case is closed. For example, Miller first sought federal habeas corpus relief in this Court in 1996. See Miller v. Sikes, CV 196-195 (S.D. Ga. Nov. 21, 1996). After filing his petition, Miller relentlessly bombarded the Court with thirty-eight (38) different petitions and motions, stalling all progress in the case. Sikes, CV 196-195, doc. nos. 2-5, 11, 13-16, 18, 21, 24, 26-32, 34-35, 37-41, 44-47, 49-51, 53-56, 58. Miller then filed an appeal, although no final order had yet been entered--that appeal was accordingly dismissed. Sikes, CV 196-195, doc. nos. 59, 79. Miller's string of motions then resumed. Sikes, CV 196-195, doc. nos. 60-62, 64-73, 75-78, 80-82.

Finally, on October 19, 1998--nearly two years after the case had been filed--the undersigned issued a Report and Recommendation that Miller be denied habeas relief. Sikes, CV 196-195, doc. no. 84. Rather than simply filing objections, Miller once again lobbed abusive quantities of paper at the Court. Sikes, CV 195-195, doc. nos. 86-110. The presiding District Judge then adopted the undersigned's recommendation, closing the case. Sikes, CV

11

195-196, doc. no. 111. In addition to filing an appeal, Miller responded with another onslaught of motions. Sikes, CV 195-196, doc. nos. 112-117, 119-122, 132-34. After the Eleventh Circuit affirmed the judgment, Miller began filing more paper, forcing the undersigned to enter an order on January 9, 2003, directing the Clerk not to accept any further filings bearing the Sikes case number. Sikes, CV 195-196, doc. no. 145. All told, Sikes was the object of unceasing filing activity for more than *six years*, all while Miller was opening and litigating dozens of other cases and appeals, as noted *supra*.

### B.   Section 1915(g)-*plus* Sanctions Are Appropriate.

Given this filing history, the Court determines that the imposition of § 1915(g)-*plus* status is merited. In addition to accruing significant filing fee debt, Miller's constant filings have burdened the Court's administration of justice. As the Eleventh Circuit has explained, "Every lawsuit filed, no matter how frivolous or repetitious, requires the investment of court time, whether the complaint is reviewed initially by a law clerk, a staff attorney, a magistrate, or the judge." Procup v. Strickland, 792 F.2d 1069, 1072 (11th Cir. 1986) (*en banc*) (*per curiam*). Miller's barrage of filings and constant, needless consumption of judicial resources--despite Judge Graham's stern warning--make it necessary to consider the option of recommending that the District Court fulfill its "constitutional obligation to protect [its] jurisdiction from conduct which impairs [its] ability to carry out Article III functions." Id. at 1073. Indeed, as Judge Edenfield has noted, the federal judiciary is obligated to allocate its "resources so as to assure that the interests of justice are served and the courthouse doors remain open to all, not simply to the relentless." Milanovich, CV 601-085, doc. no. 13, p. 3 n.5.

This Court is not the first to face the problem of vexatious litigation brought by a

12

"serial filer" of prisoner lawsuits. The Seventh Circuit Court of Appeals ruled that efforts by a § 1983 prisoner/plaintiff "to bamboozle the court by seeking permission to proceed *in forma pauperis* after a federal judge has held that § 1915(g) applies to a particular litigant will lead to immediate termination of the suit." Sloan v. Lesza, 181 F.3d 857, 859 (7th Cir. 1999). Furthermore, the Sloan court warned that "unpaid docket fees incurred by litigants subject to § 1915(g) lead straight to an order forbidding future litigation." Id. The Seventh Circuit decided that the plaintiff's filing of more than ten (10) cases that were dismissed as frivolous constituted an abuse of the judicial process that warranted a two-year bar on the plaintiff from filing any further papers with the court until he paid in full all outstanding fees and sanctions in all of the civil actions he had filed. That prohibition, however, could be revisited upon a motion filed by the plaintiff after two years, and it did not apply to criminal cases or petitions challenging the terms of his confinement. Id.

In Milanovich, discussed *supra*, the Southern District of Georgia followed the example set forth by the Seventh Circuit in Sloan. As explained above, Milanovich, a § 1983 prisoner/plaintiff who had filed seventeen (17) cases in the Southern District and fifty-four (54) cases in the federal courts in Georgia, was branded an "abusive, serial filer" undeterred by § 1915(g). Milanovich had amassed $1,470.00 in unpaid fee debt to the Court and misused tax dollars to support his paper and postage costs in order to send his filings to the Court. Id., doc. no. 13, p. 3 n.3. Relying upon Milanovich's ability to present his constitutional claims in state court,[10] the Court barred him from filing in federal court, *even in cases with an imminent harm allegation*, until he paid his $1,470.00 outstanding debt to the Court, except filings in criminal

---

[10] As noted herein, the Court made an exception to the "*plus*" bar by permitting Milanovich to file a non-frivolous case in federal court if he was able to demonstrate that he was denied access to the state courts to present his constitutional claims there.

13

proceedings brought against him and except a timely filed motion for reconsideration of the order that barred him. Id. at 5-6 (emphasis added).

Although Miller has not yet equaled or surpassed the fee debt and sheer number of cases filed by Milanovich, his filing history demonstrates the same persistent, abusive litigation conduct § 1915(g)-*plus* sanctions are meant to curb. In short, Milanovich's 54 unsuccessful cases and $1,4700.00 in fee debt are not "magic numbers" which must be met or exceeded before *plus* status should be conferred. A quick examination of other cases in which *plus* status has been applied will serve to illustrate the point.

In Heard v. Wetherington, CV 603-002 (S.D. Ga. Feb. 13, 2003) a prisoner/plaintiff had only amassed, despite filing sixteen (16) cases in the Southern District, a fee debt of $64.00.[11] Heard, CV 603-002, doc. no. 3, p. 2 & doc. no. 8, p. 1 n.1. Nonetheless, that prisoner, too, was accorded "28 U.S.C. § 1915(g)-*plus*" status based on his filing history. In another case, a prisoner/plaintiff had only amassed, despite filing thirteen (13) cases in the Southern District, a fee debt of $ 428.33. Carswell v. Moxley, CV 602-138, doc. no. 18, pp. 2-3 (S.D. Ga. May 21, 2003). That prisoner, too, was accorded "28 U.S.C. § 1915(g)-*plus*" status based on his filing history.

Like the prisoners in both Heard and Carswell, meritorious claims have been few and far between for Miller, despite years of prolific court filing.[12] Moreover, Miller has, as did the

---

[11] As noted in Heard and herein, the actual filing fee debt is not dispositive of the issue of according Miller "§ 1915(g)-*plus* status" because the Court and its staff must still invest its time and resources to initially review his filings. While the judges of the Southern District of Georgia have been consistently diligent in denying Miller *in forma pauperis* status and have prevented him from accruing a larger filing fee debt, the judiciary cannot expect to be penalized for its diligence.

[12] The prisoner in Heard had filed a total of forty-two (42) cases in the federal courts in Georgia. The prisoner in Carswell had filed a total of thirty-nine (39) civil actions in the federal courts in Georgia. As noted, Miller has filed a similar number of civil actions and appeals. Miller's level of filing activity is also commensurate with that of other prisoners who have been accorded *plus* status. See Clarke v. Secretary of the Interior, CV 605-082, doc. no. 8, 2005 WL 2237604 (S.D. Ga. Aug. 22, 2005)(35 unsuccessful cases, 11 in this

14

prisoners in Milanovich, Heard, and Carswell, needlessly consumed the resources of the Court and shown no signs of slowing down. In sum, just as in Milanovich, Heard, and Carswell, Miller has abused the judicial process as well as his access to the courts and deserves to be deemed an abusive, serial filer who warrants § 1915(g)-*plus* status. The Court recognizes that Miller can vindicate any "imminent harm" or other constitutional claims in State court. See, e.g., Howard v. City of Columbus, 239 Ga. App. 399, 402-06 (1999) (analyzing Eighth Amendment claim brought in state court pursuant to 42 U.S.C. § 1983). Satisfied that Miller's rights will be well-guarded there, this Court must make an effort to "protect [its] jurisdiction from conduct which impairs [its] ability to carry out Article III functions," Procup, 792 F.2d at 1073. In that vein, the Court recommends--just as Judge Graham warned--that the District Court invoke "its inherent powers 'to take the rattle from the baby....'" Milanovich, CV 601-085, doc. no. 13, pp. 3-4 (quoting Washington, 934 F. Supp. at 1400-01 (S.D. Ga. 1996)).

Therefore, the Court **REPORTS AND RECOMMENDS** that until Miller has paid his full filing fee debt to this Court, Tracy Miller (a.k.a. Tracy Anthony Miller) be **DEEMED** an abusive, serial filer who is accorded "28 U.S.C. § 1915(g)-*plus*" status and that the **CLERK OF COURT** be directed to return unfiled all papers Miller hereafter tenders, including any "letters," see In re Unsolicited Letters to Federal Judges, 120 F. Supp. 2d 1073 (S.D. Ga. 2000), except (1) filings in any criminal proceeding brought against him; (2) a timely filed reconsideration motion showing why this sanction should not be applied to him; and (3) any filing that argues that Miller has been denied access to the state courts.[13] The Court

---

District); Barber v. Farrakhan, CV 603-106, doc. no. 13 (S.D. Ga. Jan. 13, 2004)(29 unsuccessful cases or appeals, 10 in this District)

[13]This Court need not be delayed by any claims that this recommendation would prevent Miller from submitting proper habeas corpus claims because Miller must obtain permission to file a successive petition from the Eleventh Circuit. 28 U.S.C. § 2244(b)(3)(A). In the unlikely event that this Court receives an order from

15

**FURTHER REPORTS AND RECOMMENDS** that all future filings from Miller which fit into one of these three categories be sent directly to Judge Edenfield for exclusive treatment.

### C. Instant Case

Moreover, irrespective of the prospect of § 1915(g)-*plus* sanctions, the Court is not persuaded that Miller has sufficiently alleged "imminent danger" to be allowed to proceed IFP in this case. First, to the extent Miller's claims are purely duplicative[14] of those raised in Miller and King, the Court notes that duplicative and repetitive suits are properly dismissed as frivolous. See McWilliams v. State of Colorado, 121 F.3d 573, 575 (10th Cir. 1997); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996)(explaining that former § 1915(d), the predecessor to modern § 1915(e)(2), is "aimed at the dismissal of 'frivolous, malicious, or *repetitive* lawsuits'" (quoting Neitzke v. Williams, 490 U.S. 319, 324 (1989)); Pittman v. Moore, 980 F.2d 994, 994-95 (5th Cir. 1993)(upholding dismissal of duplicative suit under former § 1915(d) as "malicious"); Aziz v. Burrows, 976 F.2d 1158, 1158 (8th Cir. 1992).

Next, although the Court is generally not free to dismiss a suit simply because it does not believe the plaintiff will prevail, see, e.g., Neitzke, 490 U.S. at 327; In re Sofamor Danek Group, Inc., 123 F.3d 394, 400 (6th Cir. 1997); Allison v. California Adult Authority, 419 F.2d 822, 823 (9th Cir. 1969), under § 1915 the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir.

---

the Eleventh Circuit authorizing it to consider an application from Miller, it will do so. Id.

[14]"A suit is duplicative of another suit if the parties, issues, and available relief do not significantly differ between the two actions." I.A. Durbin, Inc., v. Jefferson Nat'l Bank, 793 F.2d 1541, 1551 (11th Cir. 1986).

2001)(citation and quotation omitted). Complaints "describing fantastic or delusional scenarios" are thus correctly deemed frivolous. Id. at 1349. The Eleventh Circuit has also explained that a complaint is frivolous "when it appears the plaintiff has little or no chance of success."[15] Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993) (*per curiam*) (citations omitted). Moreover, because Miller's claims of imminent danger seem principally concerned with alleged events at GSP and MSP, they present little reason to suppose that Miller was in danger at the time he filed the instant complaint. See Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir. 1999)(to come within the imminent danger exception, prisoner must be in imminent danger at the time he files suit in district court, not at the time of the alleged incident that serves as the basis for the complaint).

In addition, "[o]n the question of frivolousness, a litigant's history of bringing unmeritorious litigation can be considered." Bilal, 251 F.3d at 1350. Indeed, the Eleventh Circuit has specifically instructed, "if a plaintiff--especially a prisoner plaintiff--has a long history of bringing unmeritorious litigation, the court can consider that fact in deciding to dismiss a questionable claim." Clark v. Georgia Board of Pardons and Paroles, 915 F.2d 636, 641 (11th Cir. 1990). This is true even if the complaint "legally states a claim and the facts are not fantastic." Id. at 640. Here, both Miller's filing history (already discussed at length) and the allegations of his complaint undermine his claims of imminent danger. Besides bordering on incoherency, Miller's complaint contains scandalous and scurrilous material, namely an accusation that prison officials, prosecutors, and judges have conspired to kill him because he

---

[15] "Arguable means capable of being convincingly argued. An action or claim in which 'the plaintiff's realistic chances of ultimate success are slight' is not one capable of being convincingly argued." Moreland v. Wharton, 899 F.2d 1168, 1170 (11th Cir. 1990)(citation omitted).

17

is black and disabled.[16] (See doc. no. 1, pp. 7-8). Courts may *sua sponte* strike or dismiss without prejudice pleadings containing such material. See Fed. R. Civ. P. 12(f); Phillips v. Carey, 638 F.2d 207, 209 (10th Cir. 1981). In sum, given Plaintiff's filing history and the abusive and duplicative nature of his latest shotgun pleading, he should not be allowed to proceed IFP in the instant case. Simply put, "proceeding IFP in a civil case is a privilege, not a right." Rivera v. Allin, 144 F.3d 719, 723 (11th Cir. 1998). The Court should not allow Miller to further abuse that privilege.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's current motion to proceed IFP be **DENIED**, and that this case be **DISMISSED** without prejudice. The Court also **REPORTS** and **RECOMMENDS** that Plaintiff be accorded "28 U.S.C. § 1915(g)-*plus*" status and that all of his future filing in this District be handled in accordance with the instructions set forth on pages 15 and 16 of this Report and Recommendation.

SO REPORTED and RECOMMENDED this 26th day of October, 2005, at Augusta, Georgia.

---
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[16] Indeed, although Miller had a change of heart and marked through their names, his complaint originally named certain state judges, the Governor of the State of Georgia, the Georgia Attorney General, and the President of the United States. (Id. at 1). Although he marked out those names, the Court notes that Miller's initial inclusion of these defendants is perhaps indicative of the abusive purposes of this suit.

FEDERAL COURT SYSTEM
SOU. DIST. OF GEORGIA

PAYMENT HISTORY FOR PLRA ACCOUNTS
PAYOR: TMILL

Report Date: 10/14/05
Report Time: 08:56
Page No.: 1

| PAYOR NO. | PAYOR NAME | NO. | INVOICE DATE | TYPE | FUND | TOTAL OWED | RECEIPT DATE | NUMBER | AMOUNT | BALANCE |
|---|---|---|---|---|---|---|---|---|---|---|
| TMILL | TRACY ANTHONY MILLER-EF241919 CV198-97 | *** | 09/12/01 | CF | 5100PL | 90.00 | | | 0.00 | 90.00 |
| | CV 199.55 | *** | 09/12/01 | CF | 0869PL | 60.00 | | | 0.00 | 60.00 |
| | | *** | 04/22/99 | CF | 5100PL | 90.00 | | | 0.00 | 90.00 |
| | | *** | 04/22/99 | CF | 0869PL | 60.00 | | | 0.00 | 60.00 |
| | NOA CV697-001 | *** | 11/03/99 | CF | 0869PL | 105.00 | 06/05/02 | 40020363601 | 9.60 | 63.40 |
| | | | | | | | 11/03/99 | 40019577601 | 32.00 | 63.40 |
| | | >> Invoice Total << | | | | | | | 41.60 | 63.40 |
| | CV697-144 | *** | 03/13/98 | CF | 5100PL | 90.00 | 05/20/98 | 40018207408 | 20.00 | 70.00 |
| | | *** | 03/13/98 | CF | 0869PL | 60.00 | | | 0.00 | 60.00 |
| | CV697-154 | *** | 11/03/99 | CF | 5100PL | 90.00 | 06/05/02 | 40020364011 | 2.40 | 79.60 |
| | | | | | | | 11/03/99 | 40019577701 | 8.00 | 79.60 |
| | | >> Invoice Total << | | | | | | | 10.40 | 79.60 |
| | | *** | 11/03/99 | CF | 0869PL | 60.00 | | | 0.00 | 60.00 |
| | NOA CV 697-1[illegible]4 | *** | 05/21/01 | CF | 0869PL | 105.00 | | | 0.00 | 105.00 |
| | CV 698-57 | *** | 05/21/98 | CF | 5100PL | 90.00 | | | 0.00 | 90.00 |
| | | *** | 05/21/98 | CF | 0869PL | 60.00 | | | 0.00 | 60.00 |
| | CV698-109 | *** | 09/12/01 | CF | 5100PL | 90.00 | | | 0.00 | 90.00 |
| | | *** | 09/12/01 | CF | 0869PL | 60.00 | | | 0.00 | 60.00 |
| | CV699-83 | *** | 09/12/01 | CF | 5100PL | 90.00 | 02/28/03 | 40040094001 | 9.00 | 81.00 |
| | | *** | 09/12/01 | CF | 0869PL | 60.00 | | | 0.00 | 60.00 |
| | CV699-182 | *** | 10/27/99 | CF | 5100PL | 90.00 | | | 0.00 | 90.00 |
| | | *** | 10/27/99 | CF | 0869PL | 60.00 | | | 0.00 | 60.00 |
| | | >> Payor Total << | | | | 1,410.00 | | | 81.00 | 1,329.00 |
| >> FUND TOTALS << | | | | | 5100PL | 720.00 | | | 39.40 | 680.60 |
| | | | | | 0869PL | 690.00 | | | 41.60 | 648.40 |
| >> REPORT TOTALS << | | | | | | 1,410.00 | | | 81.00 | 1,329.00 |

EXHIBIT A

# United States District Court
## Southern District of Georgia

MILLER                                   )

vs                                       )          CASE NUMBER  CV 105-153

DONALD                                   )          DIVISION  AUGUSTA

The undersigned, a regularly appointed and qualified deputy in the office of the Clerk of this district, while conducting the business of the Court for said division, does hereby certify the following:

1. Pursuant to the instructions from the Court and in the performance of my official duties, I personally placed in the United States Mail a sealed envelope, and properly addressed to each of the persons, parties or attorneys named below; and

2. That the aforementioned enveloped contained a copy of the document dated 10/26/05, which is part of the official record of this case.

Date of Mailing:  10/26/05

Date of Certificate   [X] same date,   or _____

Scott L. Poff, Clerk

By: *Joe Howell*
Joe Howell, Deputy Clerk

Name and Address

TRACY ANTHONY MILLER SERVED @ PRISON ADDRESS

[ ] Copy placed in Minutes
[ ] Copy given to Judge
[X] Copy given to Magistrate